**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**Civil Action No. 2:16-cv-00094-HCM-LRL**

**ROBERT J. JOHNSON,** ***et al*****.,**

**Plaintiffs,**

**v.**

**GOLD KEY | PHR HOTELS AND RESORTS,** ***et al*****.,**

**Defendants.**

**MEMORANDUM IN RESPONSE TO PLAINTIFFS' MOTION TO RE-OPEN CASE, ENFORCE SETTLEMENT AGREEMENT, AND AWARD DAMAGES, ATTORNEY FEES AND COSTS**

Defendants Gold Key | PHR Hotels and Resorts and Ocean Beach Club, LLC (together, "Defendants"), by counsel, file this memorandum in response to Plaintiffs' Motion to Re-Open Case, Enforce Settlement Agreement, and Award Damages, Attorney Fees and Costs (the "Motion").

## I. Factual Background

On March 1, 2016, Plaintiffs Robert J. Johnson and Jessica M. Johnson (together, "Plaintiffs") filed their complaint in this case (the "Complaint"). The Complaint alleged that Plaintiffs made a down payment of $2,600 and executed a purchase agreement and a promissory note for a timeshare. The Complaint alleged that thereafter Plaintiffs timely rescinded their purchase, however, Defendants continued to pursue collection efforts. The Complaint sought compensatory damages, punitive damages, and injunctive relief.

Defendants were unaware of any error or mistake until they were served with the

Complaint. The general counsel for Defendants ("General Counsel") immediately investigated the allegations in the Complaint and discussed them with Plaintiffs' attorney. Through General Counsel's investigation, he determined that Plaintiffs had in fact rescinded their purchase of the timeshare timely and properly. Accordingly, Plaintiffs had a legitimate claim that they were not timeshare owners, and had no indebtedness to Defendants. General Counsel agreed with Plaintiffs that all related collections efforts and related credit reporting were invalid, and immediately took steps to terminate them.

In the three years prior to this incident, General Counsel never witnessed a similar mistake involving rescission or a related credit reporting issue. This matter was truly an aberration that fell through the cracks of a usually reliable system and set of procedures.

General Counsel agreed with Plaintiffs that negative credit reporting was made by Defendants' mortgage services department in March 2016 prior to Defendants being served with the Complaint. During this precise time, Defendants were transitioning all collections, mortgage portfolio services, and related portfolio servicing to Diamond Resorts, International ("Diamond") in connection with Defendants' sale of substantially all their assets to Diamond in October 2015. By the execution of the settlement agreement in April 2016, Defendants' entire mortgage services department had already been terminated, except for Defendants' director of mortgage services, who remained for a brief time during this transition period through April 2016. By April 2016, Defendants' credit reporting accounts had all been transitioned to Diamond. Therefore, Defendants were unable to correct the negative credit reporting themselves, and had to rely upon Diamond to do it, following instructions from Defendants. Defendants were dependent upon Diamond to correct any negative credit reporting made by Defendants, as well as to correct any negative credit reporting later made by Diamond.

Prior to Defendants responding to the Complaint, the parties entered into settlement negotiations. Plaintiffs and Defendants executed a confidential settlement agreement and mutual release, both of which were effective April 12, 2016. Among other things, the settlement agreement required Defendants to report to the credit bureaus that all debts owed to them by Plaintiffs had been satisfied in full. Defendants communicated this to Diamond and directed Diamond to make the credit reporting corrections. During the initial communications, in March and April of 2016, Defendants' director of mortgage services was present. He communicated the requirements related to the immediate cessation of collection activities, and the correction of negative information to the credit bureaus directly to the consultant, Dana Myers, (the "Consultant") for Diamond who was responsible for the transition of mortgages formerly held by Defendants, and all servicing related to those mortgages. Shortly thereafter, the tenure of Defendants' director of mortgage services ended on or about April 30, 2016. At some point thereafter, the Consultant was also no longer Defendants' point of contact for these matters. Defendants have no record of communications from the Consultant after May 2016, and Defendants had another point of contact at Diamond by June 2016. In mid-2016, Diamond was in the process of being acquired by Apollo Global Management, LLC, who was taking Diamond from a public company to a private company. This appeared to Defendants to create great upheaval in Diamond's organization, particularly in the portfolio management and collections areas.

On July 18, 2016, Plaintiffs filed a notice of dismissal of this case (the "Notice"). The Notice did not refer to the settlement agreement, and did not stipulate that this Court would retain jurisdiction to enforce its terms.

In the two years that followed, General Counsel and the controller for Defendants (the "Controller") sent numerous emails to Diamond, often in response to requests or comments of Plaintiffs or their counsel, following up on the requirements of the settlement agreement, and demanding that Diamond provide proof that they had made the required corrections with the credit reporting bureaus, and also had corrected their own records to cease all negative credit reporting and collections with respect to Plaintiffs going forward.

In February 2018, counsel for Plaintiffs reported to General Counsel that one of the credit bureaus had received negative information that Plaintiff owed a debt to Defendants, the payment for which was overdue. Following this report, General Counsel diligently and repeatedly communicated with Diamond in an attempt to correct the erroneous credit information. Nevertheless, despite repeated communications and requests from General Counsel, Diamond did not immediately correct the credit information. At least one source of confusion during this time period was that Diamond did finally correct the negative credit reporting it made in its own name, but did not at the same time correct the earlier negative credit reporting by Defendants. Diamond also, bizarrely, continued collection efforts during this period, as stated by Plaintiffs in their memorandum in support of the Motion filed in this matter.

Finally, in the past month, through a person named Dora Barrera at Diamond, the Controller has obtained proof from Diamond that it had made the required corrections with the credit reporting bureaus, and also had corrected their own records to cease all negative credit reporting and collections with respect to Plaintiffs. Therefore, there is nothing left to correct with respect to Plaintiffs' former account with Defendants. And there is no need to reopen this case.

## II. Argument

Plaintiffs correctly argue that this Court has the authority to reopen a case under the proper circumstances. *Plaintiffs' Mem. at 4*. Generally, however, these circumstances are limited to cases where the parties to a settlement agreement expressly state in the agreement that the court retains jurisdiction to enforce the agreement, or if the dismissal order incorporates the settlement agreement. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994) ("*Kokkonen*"); *see also Baker v. Lowe's Home Center, Inc.*, 2012 U.S. Dist. LEXIS 63093 at *3, 2012 WL 1598048 (W.D.Va. 2012) (dismissing motion to reopen case where court did not retain jurisdiction to enforce agreement, dismissal order did not incorporate settlement agreement, and no independent ground for federal jurisdiction existed).

### A. This Court Lacks Inherent Authority to Enforce the Settlement Agreement and Reopen the Case Under these Facts and Circumstances.

In *Kokkonen*, the parties reached a settlement agreement and dismissed the case. *Id*. at 376. As in the case at bar, the dismissal order did not refer to the settlement agreement, or state that the district court retained jurisdiction to enforce the settlement agreement. *Id*. at 377. After the dismissal order was entered, a dispute arose regarding the settlement agreement. *Id*. A motion to enforce the agreement was filed, which was opposed on the basis, among other things, that the court lacked subject-matter jurisdiction. *Id*. The district court entered an enforcement order, asserting that it had the "inherent power" to enforce the settlement agreement. *Id*. The Ninth Circuit agreed and affirmed the decision on appeal. *Id*.

The U. S. Supreme Court held that a district court lacks jurisdiction over a claim for breach of a contract, part of the consideration for which was the dismissal of a federal lawsuit. *Id*. at 381. The Supreme Court further stated that no federal statute makes the connection between the settlement agreement and the dismissal of a federal lawsuit the basis for federal

jurisdiction over the dispute over breach of the settlement agreement. *Id*. The Supreme Court further held that the doctrine of ancillary jurisdiction did not apply, because the facts to be determined with regard to the alleged breach of contract were different and distinct from the facts to be determined in the original federal lawsuit. *Id*. at 380. That situation certainly pertains to the case at bar – the facts to be determined with regard to the alleged breach of the settlement agreement would be different and distinct from the facts alleged in the original Complaint. The Supreme Court observed that if the parties to a settlement agreement wish to provide for the district court to retain jurisdiction in order to enforce the settlement agreement, they can do so; and the district court may also make compliance with the settlement agreement, or alternatively, retention of jurisdiction to enforce the agreement, part of its order. *Id*. at 381. If these events do not occur, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction. *Id*. at 382.

**B. It is Unnecessary for this Court to Exercise an Independent Basis for Federal Jurisdiction.**

Plaintiffs suggest that this Court could reopen the case based either on diversity jurisdiction (*Plaintiffs' Mem.* at 6) or federal question jurisdiction (*Id*.) This would amount to re-litigating the original case, and therefore violates the principle of judicial economy. More importantly, it is unnecessary.

Defendants can provide conclusive proof from Diamond that it has now made the required corrections with the credit reporting bureaus, and also has corrected its own records to cease all negative credit reporting and collections with respect to Plaintiffs.[1] Defendants are more than willing to provide this proof to counsel for Plaintiffs. Therefore, there is nothing left to

[1] This proof takes the form of codes between the creditor and the credit bureaus by which the creditor changes the status on accounts with the credit bureaus. This is what Defendants were trying to get Diamond to do from the inception of this matter.

correct with respect to Plaintiffs' former account with Defendants. There is no need to re-litigate the questions raised in Plaintiffs' original Complaint, and there is no need to reopen this case. Accordingly, there is no need for this Court to exercise an independent basis for federal jurisdiction in order to reopen this case, in an attempt to correct matters which have already been corrected.

**C. The Recent Actions Taken by Defendants and Diamond Will Reverse the Alleged Damage to Plaintiffs' Credit Score.**

Plaintiffs allege that their credit score has dropped 100 points due to incorrect negative credit reporting. *Plaintiffs' Mem. at 4*. Now that Defendants have conclusive proof from Diamond that it has, as of last month, made the required corrections with the credit reporting bureaus, and also has corrected its own records to cease all negative credit reporting and collections with respect to Plaintiffs, any alleged damage to their credit score will quickly be reversed.

**D. This Court Should Deny the Motion.**

This Court lacks the inherent authority to reopen the case under these facts and circumstances. Because the errors referred to in the Motion have now been corrected by Diamond, and Defendants can provide conclusive proof of this, it is not necessary for this Court to reopen the case under any independent basis for federal jurisdiction. Accordingly, this Court should deny the Motion.

**KAUFMAN & CANOLES, P. C.**

/s/ *Daniel F. Basnight*

Daniel F. Basnight
Virginia State Bar Number 42583
KAUFMAN & CANOLES
One City Center
11815 Fountain Way, Suite 400
Newport News, VA 23606

Phone: (757) 873.6309
Fax: (888) 360.9092
E-mail: dfbasnight@kaufcan.com

**CERTIFICATE OF SERVICE**

I certify that I served the following parties with this pleading via email through the CM/ECF system on May 21, 2018.

Elissa Brockbank Reese
Neil H. Koslowe, *pro hac vice* applicant
Potomac Law Group, PLLC
1300 Pennsylvania Avenue, N. W., Suite 700
Washington, D. C. 20004
ereese@potomaclaw.com
nkoslowe@potomaclaw.com

/s/ *Daniel F. Basnight*