**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**ROBERT J. JOHNSON and**
**JESSICA M. JOHNSON,**

**Plaintiffs,**

**v.** **Civil Action No. 2:16cv94**

**GOLD KEY | PHR HOTELS AND**
**RESORTS and OCEAN BEACH**
**CLUB, LLC,**

**Defendants.**

## ORDER

This matter is before the Court upon Plaintiffs Robert J. Johnson and Jessica M. Johnson's ("Plaintiffs'") Motion to Re-Open Case, Enforce Settlement Agreement, and Award Damages, Attorneys' Fees, and Costs ("Motion"). Doc. 7. For the reasons stated herein, the Court **DENIES** the Motion.

## I. BACKGROUND

Plaintiffs filed a Complaint against Defendants Gold Key | PHR Hotels and Resorts ("Gold Key") and Ocean Beach Club, LLC ("Ocean Beach") (collectively, "Defendants") on March 1, 2016. Doc. 1 ("Compl."). The Complaint alleged that Plaintiffs made a down payment on, and subsequently executed a purchase agreement and note regarding, a timeshare at the Ocean Beach resort in Virginia Beach. Sometime later, they learned that Ocean Beach was sold to Diamond Resorts, International ("Diamond"), which allegedly had "a terrible reputation." See

Compl. ¶ 11.[1] Accordingly, Plaintiffs allegedly cancelled the purchase agreement within seven (7) days of its execution, in accordance with the terms of the agreement. See Compl. ¶ 21. However, Gold Key and Ocean Beach allegedly never acknowledged the cancellation and continued to demand payment on the note and maintenance fees for the timeshare. Doc. 8 at 2. Plaintiffs alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the Virginia Real Estate Time-Share Act, as well as common law negligent misrepresentation and deceit and breach of contract claims. They requested compensatory, statutory, and punitive damages of $500,000, as well as an injunction. Compl. at 9.

General Counsel for Defendants apparently investigated Plaintiffs' claims and agreed that Plaintiffs had rescinded their purchase of the timeshare timely and properly. Doc. 12 at 2. Accordingly, before Defendants filed any responsive pleadings, the Parties reached a Settlement Agreement, and Plaintiffs voluntarily dismissed the action with prejudice on July 18, 2016. See Doc. 6. The voluntary dismissal did not specify that the Court would retain jurisdiction to enforce the settlement. Id. ("The parties have settled this action. Therefore, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), plaintiffs Robert and Jessica Johnson voluntarily dismiss this action with prejudice, each side to bear its own costs.").

The terms of the Settlement Agreement included the following:

> (i) by execution of this Agreement [Defendants] hereby cancel all contracts and purchase agreements executed by the Johnsons and Ocean Beach;
>
> (ii) they will cancel all notes and deeds of trust securing such notes executed by the Johnsons and Ocean Beach;
>
> (iii) they will report to all relevant credit agencies that any and all debts owed by the Johnsons to Ocean Beach have been satisfied in full;

---

[1] "According to postings on the Internet and at least one published report, Diamond has a reputation for being the nastiest company in the timeshare business, and it has been the subject of two lawsuits and numerous consumer complaints about high-pressure sales tactics, sky-high maintenance fees, and procedures which block timeshare owners from selling their timeshares and from taking vacations where and when they want." Id.

(iv) they will return to the Johnsons the deposit of $2,600 paid by the Johnsons to Ocean Beach; and

(v) they will prepare and record a deed of conveyance by which the timeshare conveyed by Ocean Beach to the Johnsons is conveyed back to Ocean Beach or Gold Key.

Doc. 8, Ex. 1 at 1.

In February 2018, Plaintiffs noticed that their credit reports included overdue debt to Ocean Beach from the 2015 timeshare purchase that all Parties agree was supposed to have been cancelled. See Doc. 8 at 3. They allege that this entry has caused their credit score to fall by 100 points. Id. at 4. The mistaken entry allegedly persisted into at least April 2018, when an Experian credit report showed that the Johnsons owed a debt to Ocean Beach that was more than 180 days overdue. Id. Exs. 2, 3. Plaintiffs also allegedly received from Ocean Beach a "Final Notice of Default" dated April 17, 2018, which claimed that they owed Ocean Beach $3,986 in maintenance fees and amenity charges and advised that the debt would be turned over to a collection agency if not paid in full by June 1, 2018. Id. Ex. 4.

Plaintiffs' counsel contacted Ocean Beach's counsel multiple times between February and May 2018 demanding corrective action. See Doc. 8 at 4. Ocean Beach's counsel states that the negative credit reporting and collections have since been remedied. See Doc. 12 at 4.[2] Plaintiffs assert that "it is not true" that "all the negative credit information about the Johnsons has been removed by the relevant credit bureaus." Doc. 14 at 4.[3] But even if it were true, Plaintiffs insist that this would not moot the instant Motion, because it "would not mitigate the

---

[2] "[T]he Controller [for Ocean Beach] has obtained proof from Diamond that it had made the required corrections with the credit reporting bureaus, and also had corrected their own records to cease all negative credit reporting and collections with respect to Plaintiffs. Therefore, there is nothing left to correct with respect to Plaintiffs' former account with Defendants."

[3] This assertion appears to be based on an email from Ocean Beach's General Counsel stating that "it may be 30 days before their correction is reflected on the report." Id. at 5. The same email states that the correction was made to the credit reporting bureaus on May 7, 2018. Therefore, although the credit reports may not have reflected the correction at the time Plaintiffs filed their reply brief in this matter on May 24, 2018, it is possible that the reports are accurate now.

harm the Johnsons already have suffered as a result of Ocean Beach's breach of the settlement." Id. This harm apparently consists of the "significant legal expenses" incurred in bringing the instant Motion as well as alleged violations of the FCRA and FDCPA for which Plaintiffs may be awarded $2000 in statutory damages. Plaintiffs also argued in their opening brief that "the amount in controversy exceeds $75,000 because Ocean Beach's breach jeopardizes the renewal of [Plaintiffs'] $150,000 line of credit." Doc. 8 at 6.

Defendant Ocean Beach points out that in the spring of 2016, all collections, mortgage portfolio services, and related portfolio servicing at Ocean Beach were being transferred to Diamond, in connection with the sale of substantially all of Ocean Beach's assets to Diamond in October 2015. Doc. 12 at 2. Defendants assert that by April 2016, Defendants' credit reporting accounts had all been transitioned to Diamond. Id. According to Ocean Beach, this prevented it from correcting the negative credit reporting itself, and forced Ocean Beach to rely on Diamond to do it. Id. Defendants reportedly communicated the requirements under the Settlement Agreement to Diamond, and directed Diamond to make the necessary credit reporting corrections. Id. at 3. Defendants reportedly continued to communicate with Diamond over the two (2) years following the Settlement, "often in response to requests or comments of Plaintiffs or their counsel, following up on the requirements of the settlement agreement, and demanding that Diamond provide proof that they had made the required corrections with the credit reporting bureaus, and also had corrected their own records to cease all negative credit reporting and collections with respect to Plaintiffs going forward." Id. at 4. After Plaintiffs contacted counsel for Defendants in February 2018, "General Counsel diligently and repeatedly communicated with Diamond in an attempt to correct the erroneous credit information." Id. According to Defendants, in the month prior to their filing a response to the instant Motion, they finally

"obtained proof from Diamond that it had made the required corrections with the credit reporting bureaus, and also had corrected their own records to cease all negative credit reporting and collections with respect to Plaintiffs." Id.

## II. LEGAL STANDARD

If a Court expressly incorporates the terms of a settlement agreement into its order dismissing a case, or expressly retains jurisdiction over the case for purposes of enforcing the settlement agreement, that Court has ancillary jurisdiction to enforce the settlement agreement. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 381 (1994). However, where an action is voluntarily dismissed by the parties, without the Court having entered an order retaining jurisdiction, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." Id. at 382.

## III. ANALYSIS

Plaintiffs do not dispute that the Court does not have ancillary jurisdiction to enforce the Settlement Agreement in this case. See Doc. 8 at 6 ("[T]he Court cannot exercise ancillary jurisdiction because the Johnsons' Notice of Dismissal did not provide that the Court retained jurisdiction to enforce the Agreement and did not incorporate the Agreement."). However, Plaintiffs argue that the Court has independent jurisdictional bases to enforce the Settlement Agreement under both 28 U.S.C. §1332(a) (diversity jurisdiction) and 28 U.S.C. §1331 (federal question jurisdiction). For the reasons stated below, the Court **FINDS** that Plaintiffs have failed to establish either source of subject matter jurisdiction in this case.

### A. Diversity

Diversity jurisdiction under 28 U.S.C. § 1332(a) exists over disputes between citizens of different states, where the amount in controversy exceeds $75,000. Plaintiffs note that the

Johnsons reside in Massachusetts and Ocean Beach resides in Virginia; therefore, the diversity requirement is met. And they assert that the amount in controversy exceeds $75,000, "because Ocean Beach's breach jeopardizes the renewal of [Plaintiffs'] $150,000 line of credit." Doc. 8 at 6. However, Plaintiffs do not demand damages exceeding $75,000 in their prayer for relief. Rather, they ask the Court to order Ocean Beach "immediately to withdraw and correct all negative credit information about the Johnsons," and to award them "statutory damages of $2,000, plus the attorneys' fees and costs they incurred in bringing this motion." Doc. 8 at 9.

If a Court determines that a plaintiff "could not recover" damages in excess of $75,000 in a case where the only jurisdictional basis is § 1332, the case must be dismissed or remanded to state court for lack of subject matter jurisdiction. See Wiggins v. N. Am. Equitable Life Assur. Co., 644 F.2d 1014, 1017–18 (4th Cir. 1981). Even if the negative credit reporting completely prevented Plaintiffs from renewing their $150,000 line of credit—and to be clear, Plaintiffs have not alleged that they were in fact unable to renew—Plaintiffs have failed to give any explanation at all for why that injury would damage them in excess of $75,000. The likely damages in such a situation would be compensation for excess interest paid on the loan due to the bad credit score, or perhaps lost profits for the period during which Plaintiffs lost the line of credit. But it does not logically follow that the damages from losing access to a line of credit would somehow be equivalent to the amount of the credit line, which appears to be the position Plaintiffs are presenting to the Court. Because Plaintiffs have not specifically alleged damages in excess of $75,000, and because such damages seem unlikely given that there is no evidence that Plaintiffs were not in fact able to renew their line of credit, the Court **FINDS** Plaintiffs have failed to establish the requisite amount in controversy for jurisdiction under § 1332.

**B. Federal Question**

Plaintiffs also argue that the Court has subject matter jurisdiction because they have alleged that Ocean Beach violated the FCRA and FDCPA, which federal claims may be adjudicated in this Court pursuant to 28 U.S.C. § 1331. Specifically, Plaintiffs allege:

- Ocean Beach's furnishing of false credit information to Experian—namely, that the Johnsons owe $18,880 to Ocean Beach—[is] a clear cut violation of the FCRA.

- Ocean Beach's "Final Notice of Default," threatening the Johnsons with collections action if they do not pay $3,986 in maintenance fees and amenity charges, is a clear cut violation of the FDCPA.

Doc. 8 at 7.

The Court **FINDS** that these claims are misplaced. Clearly Plaintiffs' credit reports reflected the inaccurate timeshare debt long after it should have been removed pursuant to the Settlement Agreement. However, it is equally clear from the briefing on this Motion that Ocean Beach is no longer in control of the relevant credit reporting services and collections accounts about which Plaintiffs complain, and that they have not been in control of those services since prior to the Notice of Settlement filed in this case in July 2016. Plaintiffs clearly were aware of the sale of substantially all of Ocean Beach's assets to Diamond—that sale is the reason they cancelled the timeshare purchase that started this lawsuit in the first place. Plaintiffs' claims are therefore more appropriately directed at Diamond, which controls the relevant services and accounts, and which is the entity that actually issued the "Final Notice of Default" received by Plaintiffs in April 2018 (albeit purportedly on Ocean Beach's behalf). Because Plaintiffs have failed to state a claim against Ocean Beach for violation of the FCRA and FDCPA (even if they may have a claim under these statutes against Diamond), the Court **FINDS** it does not have an independent source of jurisdiction to enforce the Settlement Agreement under § 1331.

## IV. CONCLUSION

For the reasons stated herein, the Court **FINDS** it has neither ancillary jurisdiction nor subject matter jurisdiction to provide Plaintiffs' requested relief of reopening this case and enforcing the terms of the Settlement Agreement against Ocean Beach. Accordingly, the Court **DENIES** Plaintiffs' Motion, Doc. 7.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

July 6, 2018